01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
07                             AT SEATTLE

08 LARRY WATKINS,                        )
                                         )   CASE NO. C10-1351-JCC
09          Plaintiff,                   )
                                         )
10     v.                                )   REPORT AND RECOMMENDATION
                                         )
11 SGT. BUSS, et al.,                    )
                                         )
12          Defendants.                  )
   _____)

13

14                              INTRODUCTION

15          Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint

16 pursuant to 42 U.S.C. § 1983.  (Dkt. 10.)  He names Sgt. Buss (sic), Officer Cook, Officer

17 Camba, King County, Probation Officer Debra Codoroa, Sgt. Pierson, Capt. Bautista, Jason

18 Rollolazo (sic), Officer Starks, Officer Stark, and Major John Doe as defendants.  Plaintiff

19 alleges defendants denied him a mattress in a disciplinary deadlock cell, caused his "false

20 arrest," improperly froze his inmate account, violated his rights in relation to a disciplinary

21 hearing, and lied about and slandered him in relation to two different incidents at the King

22 County Correctional Facility (KCCF).  (*Id.*)

REPORT AND RECOMMENDATION
PAGE -1

01    Defendants filed a motion for summary judgment.  (Dkt. 34.)  Plaintiff did not oppose

02  defendants' motion.   The Court deems plaintiff's failure to oppose to be an admission that the

03  motion has merit.   *See* Local Civil Rule 7(b)(2).   The Court further finds defendants entitled

04  to summary judgment and this matter subject to dismissal.

05                                        BACKGROUND

06    Plaintiff has been booked into KCCF forty-two times since 1988.  (Dkt. 36, ¶10.)  A

07  1995 notation in the King County Department of Adult and Juvenile Detention (DAJD)

08  Classification System states:   "Inmate Watkins is a behavior management problem and has a

09  history of institutional escapes.   He has assaulted other inmates, he has escaped from a state

10  transport van.   He has a history of assaults on correctional staff (in juvenile detention).   Use

11  caution when transporting."   (*Id.*, ¶8.)

12    Plaintiff's "false arrest" claim, directed against defendant probation officer Debra

13  Codoroa, relates to his April 10, 2007 booking on a probation hold.  (*Id.*, ¶11.)[1]  He was

14  released at the expiration of that sentence on May 2, 2007.  (*Id.*)  (*See also* Dkt. 10 at 3

15  (plaintiff states in his amended complaint that he spent "almost 30 days in jail" following his

16  arrest by Codora).)   Plaintiff was subsequently booked and released from KCCF on five

17  different occasions in 2007 and 2008, leading to a final booking on December 29, 2009.  (Dkt.

18  36, ¶¶ 12-17.)   Plaintiff brings his remaining claims in association with incidents following his

19  December 2009 booking, while he was a pretrial detainee at KCCF, and against King County

20

21    1 Plaintiff's amended complaint was never served on Debra Codoroa.  Counsel for the other
    named defendants attest that they do not represent Codoroa and that she is not employed by King
22  County.  In any event, as discussed below, the motion for summary judgment includes adequate
    grounds for dismissing plaintiff's claims against Codoroa.

REPORT AND RECOMMENDATION
PAGE -2

01   and the DAJD employees identified above.[2]

02          Following a March 28, 2010 inmate disturbance at KCCF, defendant Starks infracted

03   plaintiff for violation of a number of inmate rules, including refusing orders causing a

04   Sergeant's response, tampering with a safety or security device, refusing orders, nuisance

05   activity, rioting, possession of a weapon or escape tool, intentional flooding, verbal and

06   non-verbal abuse directed at staff, threats, group demonstration, property damage of more than

07   $100.00, and tampering with equipment.   (Dkt. 40, ¶4 and Ex. A.)   That same day, the Seattle

08   Times published an article regarding the disturbance.   (Dkt. 36.)   The article includes quotes

09   from DAJD Major William Hayes and reflects the property damage resulting from the incident.

10   *See*  http://seattletimes.nwsource.com/html/localnews/2011467715_jail29m.html.   It states

11   that none of the inmates had "homemade weapons," and does not include the names of any

12   inmates involved in the disturbance.  *Id.*

13          Plaintiff's disciplinary hearing regarding the March 28th incident began on April 1,

14   2010.  (Dkt. 40, ¶5.)   DAJD Correction Programs Specialist Jason Wanner conducted the

15   hearing "cell-side[,]" rather than at the typical Classification office location.   (*Id.*, ¶11.)

16   Wanner attests that approximately five percent of disciplinary hearings are conducted cell-side

17   "as a reflection of the inmate's assaultive or oppositional in-custody behavior or other security

18   factors and resultant concerns for the safety of both corrections officers and the inmate

19   himself."   (*Id.*, ¶¶11-12.)   The "very unusual" cell-side location was chosen in plaintiff's case

20

---

21          2 Defendants submit that there were no DAJD employees by the names Jason Rollolazo or
Sergeant Buss during the relevant time period.  (Dkt. 39, ¶¶9-10.)   However, waivers of service of
22   summons were returned by DAJD employees "Jason Rollolazo", "'defendant' as named by plaintiff,"
and David Bliss, as well as by Major Corinna Hyatt.   (Dkts. 10, 18, 26-27.)

REPORT AND RECOMMENDATION
PAGE -3

01  based on the perception of the security risk plaintiff presented.   (*Id.*)

02      Wanner gave plaintiff a Disciplinary Check List & Statement form, with a copy of the

03  infraction attached.   (*Id.*, ¶6 and Exs. A & B.)   He pointed out the places on the form where

04  plaintiff and witnesses could provide statements and went over each alleged rule violation in

05  detail.   (*Id.*, ¶¶7-8.)   Plaintiff pled guilty to violating four rules – refusing orders causing a

06  Sergeant's response, tampering with a safety or security device, refusing orders, and nuisance

07  activity – and signed both the check list and statement form and an Inmate Infraction

08  Report/Disciplinary Hearing.   (*Id.*, ¶¶8-9 and Exs. B & C.)   The hearing decision was

09  suspended pending further investigation.   (*Id.*, ¶10.)

10      Wanner returned to plaintiff's cell on April 2, 2010.   (*Id.*, ¶13.)   Plaintiff listed five

11  witnesses on the checklist and statement form, but refused to provide a statement, instead

12  writing:   "Explain at Hearing… ."   (*Id.*, ¶13 and Ex. B.)

13      On April 3, 2010, DAJD updated plaintiff's security level to "Ultra."   (Dkt. 36, ¶19.)

14  DAJD also, on April 6, 2010, froze plaintiff's inmate account – which at that time contained

15  $38.94 – during the pending investigation into the inmate disturbance.   (Dkt. 38, ¶3.)   DAJD

16  froze the account in order to prevent plaintiff from disbursing his funds before it could be

17  determined whether he owed reimbursement.   (*Id.*)   A DAJD representative attests that the

18  freezing of plaintiff's account was a "very atypical method to recover restitution[]" and that,

19  typically, an amount owed is listed in the "'recoverable' field" on an inmate account

20  spreadsheet and twenty-five percent of any deposits are deducted until a debt is paid in full.

21  (*Id.*, ¶6.)   An April 19, 2010 deposit of $100.00 to plaintiff's inmate account was frozen on

22  April 26, 2010.   (*Id.*, ¶4.)   DAJD released the $138.94 balance in plaintiff's account for his

REPORT AND RECOMMENDATION
PAGE -4

01   use on September 21, 2010.  (*Id*., ¶5.)

02        Plaintiff was found guilty of violating all of the rules addressed on the March 28, 2010

03   infraction.  (Dkt. 40, ¶16 and Ex. C.)  Multiple statements obtained from KCCF personnel

04   identified plaintiff as an instigator of the disturbance, as responsible for property damage,

05   including breaking windows, and as having held a piece of metal in his hand during the

06   disturbance.  (*Id*., Ex. D.)  He was ordered to serve ten days of disciplinary deadlock and lost

07   "good time" on the five cause numbers for which he was being held. (*Id*., ¶18 and Ex. C.)

08   Defendant Sergeant Pierson, on or about April 9, 2010, escorted plaintiff to the KCCF

09   Classification office and provided him with a copy of the disciplinary hearing results and

10   sanctions.  (*Id*.)  The check list and statement form indicates that witness statements were not

11   attached or obtained because "inmate witnesses were also implicated in the incident and

12   provided a separate account."  (*Id*., Ex. B; case altered.)

13        Plaintiff filed a grievance complaining about his right to be present and to have

14   witnesses at his disciplinary hearing.  (Dkt. 33 at 2.)  The KCCF grievance procedure requires

15   the submission of a grievance within fourteen calendar days of the incident grieved, by first

16   directing the issue toward the staff member immediately involved in the issue and, if the issue is

17   not then resolved or if the grievance is about a specific staff member, by submitting an Inmate

18   Grievance Form.  (Dkt. 36, ¶¶27-28.)  The response to the grievance may thereafter be

19   appealed.  (*Id*., ¶28.)

20        The staff response to plaintiff's disciplinary hearing grievance indicated that the

21   disciplinary process was not grievable.  (Dkt. 33 at 3.)  Plaintiff appealed, asserting a

22   violation of his due process rights and his right "to be present at his hearing; plus [witnesses.]"

REPORT AND RECOMMENDATION
PAGE -5

01   (Dkt. 40, Ex. E.)   The appeal was denied based on plaintiff's failure to raise any substantive

02   issues, because he had been given an opportunity to make a statement and call witnesses, and

03   because there was sufficient evidence to find him guilty of all charges.   (*Id*.)

04         Plaintiff also filed a grievance complaining about the freeze on his inmate account.

05   (Dkt. 33 at 6-7.)   The staff response to the grievance explained that the account was frozen

06   pending a decision regarding restitution, that plaintiff was "able to order indigent commissary if

07   needed[,]" and that his account would be restored if no restitution was ordered.   (*Id*. at 7.)

08   Plaintiff appealed and the final decision, written by defendant Bautista, stated that no process

09   was required before freezing inmate funds where there was probable cause an individual had

10   committed a criminal offense, as well as that plaintiff's access to his funds would be restored

11   upon completion of the criminal proceedings.   (*Id*.)

12         Plaintiff again received an infraction on July 4, 2010 for refusing to "rackback," or

13   return to his cell, requiring a sergeant response and causing a show of force before he would

14   comply.   (Dkt. 36, ¶20.)   He pled guilty and called staff and inmate witnesses at a July 7, 2010

15   disciplinary hearing.   (*Id*., ¶¶20-21.)   One inmate witness was directed out of the area after

16   plaintiff refused orders and caused imminent use of force.   (*Id*., ¶21.)   Plaintiff was found

17   guilty of refusing orders, causing a supervisor response, and using verbally abusive language,

18   and was ordered to disciplinary deadlock as a sanction.   (*Id*., ¶¶22, 24.)   Corrections Program

19   Supervisor Rollolazo noted that "'defiance of staff authority is an ongoing behavior problem.'"

20   (*Id*.)

21         KCCF correction officers moved plaintiff to disciplinary deadlock on the date of the

22   July 2010 hearing.   During the move, plaintiff refused an order to go to his knees and lie flat on

REPORT AND RECOMMENDATION
PAGE -6

01  the floor and entered into an altercation with defendants Cook, Buss (properly identified as

02  "Bliss"), and Camba, resulting in a "code Blue" being called.  (*Id.*, ¶25.)

03      Plaintiff contends that the officers involved in his move to disciplinary deadlock told

04  him it was King County custom to deny deadlock inmates mattresses.  (Dkt. 10 at 3.)   A

05  DAJD representative attests that, when an inmate vacates a cell, inmate workers clean the

06  mattress and leave it outside the cell folded up so that corrections officers know that the

07  mattress has been cleaned and may be used by another inmate.   (*Id.*, ¶26.)

08      Correction Officer Kenneth Potts attests that, on July 9, 2010, he spoke with plaintiff for

09  approximately thirty minutes regarding various complaints plaintiff had about his incarceration,

10  but that plaintiff never indicated he did not have a mattress.   (Dkt. 37, ¶2.)   However, on the

11  following day, a Jail Health Services nurse informed Potts that plaintiff complained about not

12  having a mattress.  (*Id.*, ¶3.)   Potts immediately retrieved a mattress and provided it to

13  plaintiff.  (*Id.*, ¶9.)   Potts attests that plaintiff admitted he purposefully kept quiet about not

14  having a mattress in the hopes of complaining and receiving a monetary settlement, and that

15  plaintiff had what appeared to be a properly made bed, with blanket and sheets, in his cell.

16  (*Id.*, ¶¶4-8.)   An Officers Report by Potts dated July 10, 2010 corroborates Potts' account of

17  this incident and reflects that plaintiff was infracted for lying on that same date.  (*Id.*, Ex. A

18  (the report also states that plaintiff had a lengthy conversation with Wanner about his status and

19  infractions and similarly failed to inform Wanner that his cell lacked a mattress).)

20      Plaintiff did not appeal the July 7, 2010 hearing decision.  (Dkt. 36, ¶23.)   Nor did he

21  file grievances regarding his mattress, "false arrest," any other issues relating to his April 2010

22  disciplinary hearing, or lies or slander by KCCF employees.  (*Id.*, ¶29.)

REPORT AND RECOMMENDATION
PAGE -7

01      On October 11, 2010, plaintiff pled guilty to Prison Riot and Malicious Mischief in the

02   First Degree and, on November 4, 2010, King County Superior Court sentenced plaintiff to a

03   prison-based Drug Offender Sentencing Alternative sentence of twenty-five months in custody,

04   followed by twenty-five months of community supervision.  (Dkt. 35, ¶3 and Ex. A.)   On

05   November 9, 2010, KCCF transferred plaintiff to the Washington Department of Corrections to

06   begin serving his sentence.   (Dkt. 36, ¶17.)

07                                          DISCUSSION

08      Summary judgment is appropriate when "the pleadings, depositions, answers to

09   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

10   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

11   matter of law."   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

12   The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

13   make a sufficient showing on an essential element of his case with respect to which he has the

14   burden of proof.   *Celotex*, 477 U.S. at 322-23.   The court must draw all reasonable inferences

15   in favor of the non-moving party.   *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747

16   (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).

17      "The mere existence of a scintilla of evidence in support of the non-moving party's

18   position is not sufficient[]" to defeat summary judgment.   *Triton Energy Corp. v. Square D

19   Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).   Also, the nonmoving party "cannot defeat summary

20   judgment with allegations in the complaint, or with unsupported conjecture or conclusory

21   statements."   *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

22      Plaintiff avers claims pursuant to 42 U.S.C. § 1983.   In order to sustain a § 1983 claim,

REPORT AND RECOMMENDATION
PAGE -8

plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law.   *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff raises a number of claims in this lawsuit, maintaining violation of his constitutional rights through the denial of a mattress, "false arrest," the freezing of his inmate account, the procedures associated with his April 2010 disciplinary hearing, and lies and slander.   (*Id.*)   For the reasons described below, the Court finds no issue of material fact and plaintiff's claims subject to dismissal on summary judgment.

A.     Municipal or Supervisory Liability

A local government unit or municipality, like King County, can be sued as a "person" under § 1983.   *Monell v. Department of Social Servs.*, 436 U.S. 658, 691-94 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor.   *Id.* at 691.   A plaintiff seeking to impose liability on a municipality under § 1983 must identify municipal "policy" or "custom" that caused his or her injury.   *Board of the County Commissioners v. Brown*, 520 U.S. 397, 403 (1997).

In this case, plaintiff avers the existence of several King County customs causing him injury, including customs of denying deadlock inmates mattresses, freezing inmate accounts, and holding inmate infraction hearings in front of other inmates.   Defendants deny that deadlock inmates are deprived mattresses and describe the actions of freezing inmate accounts and holding cell-side disciplinary hearings as atypical.   Plaintiff presents not even a scintilla of evidence to support his claims that the alleged customs exist or that they caused him harm of a

REPORT AND RECOMMENDATION
PAGE -9

01  constitutional dimension.  Instead, his allegations against King County are no more than

02  conclusory and, therefore, insufficient to defeat summary judgment.  *Hernandez*, 343 F.3d at

03  1112.  *See also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)

04  (conclusory allegations unsupported by factual data are insufficient to defeat a motion for

05  summary judgment) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

06      Also, a plaintiff in a § 1983 action must allege facts showing how individually named

07  defendants caused or personally participated in causing the harm alleged in the complaint.

08  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).  A plaintiff may not hold supervisory

09  personnel liable under § 1983 for constitutional deprivations under a theory of supervisory

10  liability.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, a plaintiff must allege

11  that a defendant's own conduct violated the plaintiff's civil rights.  Here, as argued by

12  defendants, to the extent plaintiff intends any claims against King County supervisory

13  personnel under a theory of either municipal or respondeat superior liability, such claims

14  necessarily fail and should be dismissed.

15  B.   <u>Statute of Limitations</u>

16      Federal courts apply the forum state's personal injury statute of limitations to § 1983

17  claims.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  A three year statute of limitations

18  applies in Washington.  RCW § 4.16.080; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045,

19  1058 (9th Cir. 2002).  A § 1983 action accrues and the statute of limitations begins to run when

20  a plaintiff "'knows or has reason to know of the injury which is the basis of his or her action.'"

21  *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (quoted sources omitted).

22  State law also governs tolling of the statute of limitations.  *Hardin v. Straub*, 490 U.S. 536,

REPORT AND RECOMMENDATION
PAGE -10

01  543-44 (1989).   Washington law provides for tolling of the statute of limitations for an

02  individual who is imprisoned at the time a cause of actions accrues.   RCW § 4.16.190 (stating

03  that, if an individual is "imprisoned on a criminal charge prior to sentencing, the time of such

04  disability shall not be a part of the time limited for the commencement of action.")   However,

05  the statute of limitations begins to run upon an individual's release from imprisonment and no

06  subsequent imprisonment tolls its operation.   *Bagley*, 923 F.2d at 762 & n.4 (citing *Pederson v.*

07  *Dep't of Transp.*, 43 Wash. App. 413, 422, 717 P.2d 773 (1986)).   *See also Bianchi v.*

08  *Bellingham Police Dep't*, 909 F.2d 1316, 1318 (9th Cir. 1990) ("[A]ctual, uninterrupted

09  incarceration is the touchstone for determining disability by incarceration.")

10         Plaintiff alleges that Codoroa falsely arrested him on either April 2, 2007 or April 10,

11  2007.   Plaintiff concedes his release from jail less than thirty days later.   (Dkt. 10 at 3.)   (*See*

12  *also* Dkt. 36, ¶11 (plaintiff was booked into custody on April 10, 2007 and released on May 2,

13  2007).)   His statute of limitations, therefore, began to run sometime in early May 2007 and

14  expired three years later, in early May 2010.   Plaintiff submitted his proposed complaint in this

15  matter on August 23, 2010 (*see* Dkt. 1), several months after his statute of limitations expired.

16  Accordingly, plaintiff's claims against Codoroa are time-barred and should be dismissed.[3]

17  C.     Exhaustion

18         As stated by the Prison Litigation Reform Act (PLRA): "No action shall be brought

19  with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

20  ────────────────

21         3 As reflected in an earlier Order from this Court (*see* Dkt. 9), plaintiff's claims against
    Codoroa face other obstacles, including, but not limited to, Codoroa's immunity.   *See Demoran v. Witt*,

22  781 F.2d 155, 157 (9th Cir. 1986) ("[P]robation officers preparing reports for the use of state courts
    possess an absolute judicial immunity from damage suits under [§] 1983 arising from acts performed
    within the scope of their official duties.")

REPORT AND RECOMMENDATION
PAGE -11

01  prisoner confined in any jail, prison, or other correctional facility until such administrative

02  remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  *See also Jones v. Bock*, 549

03  U.S. 199, 211-12 (2007) ("There is no question that exhaustion is mandatory under the PLRA

04  and that unexhausted claims cannot be brought in court.")  The exhaustion rule is applied to

05  both prisoners and pretrial detainees.  *See*, *e.g.*, *Panaro v. City of N. Las Vegas*, 432 F.3d 949,

06  950, 952-53 (9th Cir. 2005).  The PLRA does not define "prison conditions," but the Supreme

07  Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison

08  life, whether they involve general circumstances or particular episodes, and whether they allege

09  excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

10      Exhaustion under the PLRA must be "proper."  *Woodford v. Ngo*, 548 U.S. 81, 90-93

11  (2006).  In order to properly exhaust, a prisoner must comply with a prison's grievance

12  procedures.  *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  This includes "compliance

13  with [a prison's] deadlines and other critical procedural rules because no adjudicative system

14  can function effectively without imposing some orderly structure on the course of its

15  proceedings."  *Woodford*, 548 U.S. at 90-91.  *Accord Griffin v. Arpaio*, 557 F.3d 1117, 1119

16  (9th Cir. 2009) (proper exhaustion "means that a grievant must use all steps the prison holds

17  out, enabling the prison to reach the merits of the issue.")

18      It is undisputed that plaintiff utilized the available grievance procedure for two of the

19  issues raised in this lawsuit, his right to his presence and witnesses at his April 2010

20  disciplinary hearing and the freezing of his inmate account.  (*See* Dkt. 33.)  Defendants attest

21  that plaintiff failed to utilize the grievance process for any of his remaining claims, including

22  those related to his mattress, his arrest, any other complaints about his April 2010 disciplinary

REPORT AND RECOMMENDATION
PAGE -12

01 hearing, and his complaints of lies or slander by different DAJD employees.  (Dkt. 36, ¶29.)

02 They argue that all of those claims should be dismissed under the PLRA for failure to exhaust.

03          Plaintiff, prior to the filing of defendants' motion for summary judgment, submitted a

04 document stating that he wrote several grievances about his "issues" that were never answered.

05 (Dkt. 33.)   He attached a grievance dated October 14, 2010 complaining that he had filed two

06 grievance reports and had not received any response.  (*Id.*)  However, neither the grievance

07 itself, nor plaintiff's submission identifies the issues he allegedly grieved.  (*Id.*)  Moreover,

08 even assuming plaintiff did file a relevant grievance, there is no indication he completed the

09 grievance procedure.   In fact, the October 2010 grievance submitted does not contain a staff

10 response, an appeal, or a final response.  (*Id.* at 4-5.)   Nor did plaintiff submit any response to

11 defendants' motion for summary judgment asserting his exhaustion or attempted exhaustion of

12 his remaining claims.

13          Given the above, the Court concludes that plaintiff failed to exhaust all but two of his

14 claims.   Plaintiff's unexhausted claims, including those related to his mattress, any other

15 complaints about his April 2010 disciplinary hearing, and his complaints of lies or slander by

16 DAJD employees, should, therefore, be dismissed.   42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at

17 211-12.

18 D.   Merits of Exhausted Claims

19          Defendants argue that plaintiff's exhausted claims regarding his right to his presence

20 and witnesses at his April 2010 disciplinary hearing and the freezing of his inmate account lack

21 merit.   They also assert their entitlement to qualified immunity.   For the reasons described

22 below, the Court agrees that plaintiff's exhausted claims lack merit and should be dismissed.

REPORT AND RECOMMENDATION
PAGE -13

01          1.      Disciplinary Hearing:

02          Plaintiff alleges violation of his Fifth and Fourteenth Amendment rights to due process

03  through the denial of his presence and witnesses at his April 2010 disciplinary hearing.   (Dkt.

04  10 at 5.)   Also, although it was never grieved, plaintiff takes issue with the fact that the hearing

05  took place cell-side, in front of other inmates.   (*Id*. at 5-6.)

06          In *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974), the Supreme Court outlined the

07  minimum procedures required in the face of disciplinary charges.   The Court found that due

08  process requires, *inter alia*, a written statement – addressing the charges, a description of the

09  evidence, and an explanation for the action taken – at least twenty-four hours prior to the

10  disciplinary hearing, that written record be made of the proceedings, and the opportunity to

11  present documentary evidence and call witnesses, unless such an allowance would interfere

12  with institutional security.   *Id.   See also Mitchell v. Dupnik*, 75 F.3d 517, 523-26 (9th Cir.

13  1996) (describing applicability of *Wolff* to pretrial detainees).

14          Prison officials must be afforded the "necessary discretion to keep the hearing within

15  reasonable limits[.]"   *Wolff*, 418 U.S. at 566.   They must also, however, have a legitimate

16  penological reason for limiting an inmate's efforts to raise a defense.   *Koenig v. Vannelli*, 971

17  F.2d 422, 423 (9th Cir. 1992) (per curiam).   The right to call witnesses may legitimately be

18  limited by "the penological need to provide swift discipline in individual cases . . . [or] by the

19  very real dangers in prison life which may result from violence or intimidation directed at either

20  other inmates or staff."   *Ponte v. Real*, 471 U.S. 491, 495 (1985).   Prison officials must make

21  individualized determinations to limit the calling of witnesses, *Serrano v. Francis*, 345 F.3d

22  1071, 1079 (9th Cir. 2003), and, eventually, explain the reasoning behind the decision, *Ponte*,

REPORT AND RECOMMENDATION
PAGE -14

01  471 U.S. at 497, "whether it be for irrelevance, lack of necessity, or the hazards presented in

02  individual cases[,]" *Wolff*, 418 U.S. at 566.

03      In this case, plaintiff's assertion that he was denied the right to be present at his hearing

04  is contradicted by evidence submitted by defendants.  (Dkt. 40, ¶¶5-17 and Exs. B & C.)   In

05  fact, by complaining about the lack of privacy afforded by the cell-side location of the hearing

06  (Dkt. 10 at 5-6), plaintiff concedes his presence.   Furthermore, even if plaintiff had properly

07  grieved the location of the hearing, he fails to present any support for the contention that it

08  deprived him of due process or otherwise violated his constitutional rights.   Defendants, on the

09  other hand, reasonably point to plaintiff's history as a "behavior management problem" (Dkt.

10  36, ¶8), and explain the hearing location as resulting from the perception of the security risk

11  plaintiff presented (Dkt. 40, ¶¶11-12).

12      Defendants further provide legitimate penological reasons for imposing other

13  limitations on plaintiff's presentation of his defense.   In addition to the fact that plaintiff had

14  just taken part in an inmate disturbance at the jail and was deemed to present a security risk,

15  defendants note that the witnesses named by plaintiff "were also implicated in the incident and

16  provided a separate account[.]"   (*Id.*, Ex. B.)  Defendants, therefore, reasonably relied upon

17  both the hazards presented and the lack of necessity in declining to call plaintiff's witnesses to

18  give testimony at the hearing.  *See Wolff*, 418 U.S. at 566.  Accordingly, plaintiff's claims

19  regarding his April 2010 disciplinary hearing should be denied.

20      2.      Freezing Inmate Account:

21      Plaintiff alleges that defendants Pierson and Bautista violated his due process and equal

22  protection rights and subjected him to cruel and unusual punishment by freezing his inmate

REPORT AND RECOMMENDATION
PAGE -15

01  account.  (Dkt. 10 at 5.)   He asserts that defendants had knowledge other inmates may have

02  destroyed property in the same incident, but chose solely to freeze his account, and kept the

03  account frozen even after the conclusion of the internal investigation.  (*Id.*)  He also avers he

04  was told that the action was taken pursuant to King County custom and pursuant to court

05  authority.  (*Id.*)

06              a.    Equal Protection:

07          "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause

08  of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or

09  purpose to discriminate against the plaintiff based upon membership in a protected class."

10  *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citations omitted).  Here,

11  plaintiff makes no showing either that he belongs to a protected class or that defendants acted

12  with intent to discriminate against him in freezing his account.  His assertion of an equal

13  protection violation is no more than conclusory and should be denied.  *Hernandez*, 343 F.3d at

14  1112.

15          b.    Due Process:

16          The Fourteenth Amendment prevents a state from depriving a person of life, liberty, or

17  property without due process of law.  U.S. Const. amend. XIV.  Plaintiff here appears to

18  allege a deprivation of his property without due process.

19          A prisoner has a protected property interest in the funds in his inmate trust account.

20  *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985).  Upon determining a property interest

21  exists, the Court determines the process due.  *Id.*  Application of the due process analysis

22  requires "a recognition that not all situations calling for procedural safeguards call for the same

01  kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).   As a general rule, where a

02  prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized

03  negligent or intentional action of a prison official, the prisoner cannot state a constitutional

04  claim where the state provides an adequate post-deprivation remedy.   *See Zinermon v. Burch*,

05  494 U.S. 113, 129-32 (1990); *Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled on other*

06  *grounds by Daniels v. Williams*, 474 U.S. 327 (1986).   However, where the deprivation results

07  from an established state procedure, rule, or regulation, i.e., where the prison official's conduct

08  is authorized by the state, the existence of an adequate post-deprivation remedy is irrelevant.

09  *See Logan v. Zimmerman Brush Co*., 455 U.S. 422, 433-37 (1982)

10      Defendants argue there was no deprivation of property in this case, as the balance in

11  plaintiff's account was only temporarily frozen and ultimately returned to plaintiff intact.   *Cf.*

12  *Quick*, 754 F.2d at 1522-23 (entailing actual withdrawal of funds to pay two prison employees

13  whose property an inmate had damaged).   Defendants further point to plaintiff's failure to

14  allege that the freezing of his account was in accordance with either DAJD policy or state law;

15  rather, plaintiff emphasized the fact that DAJD froze only his account and not those of the other

16  inmates suspected of causing property damage during the inmate disturbance.   They argue that

17  such random and unauthorized conduct could have been addressed through state law, which

18  would serve as an adequate post-deprivation remedy.   *See*, *e.g.*, *Parratt*, 451 U.S. at 538.

19      Plaintiff, in failing to respond to defendants' motion, fails to contest the allegation that

20  the temporary freeze on his account did not amount to an actual deprivation of property.   His

21  amended complaint states only that his inmate account "enable[ed] [him] to buy phone card(s)

22  & ect.[,]" (Dkt. 10 at 5), while the grievance filed in relation to this issue reflects that plaintiff

01  remained able to order indigent commissary.   (Dkt. 33 at 7).   There does not appear to be any

02  clear Ninth Circuit law on whether something other than a permanent deprivation of inmate

03  funds could qualify as an interference with a property interest requiring due process protections.

04  *But see Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 291 (3d Cir. 2008) (finding a deprivation of

05  a protected property interest for purposes of procedural due process where prison officials

06  assessed a prisoner's inmate account for medical and other expenses, without actually

07  deducting funds from the account).

08          Plaintiff also fails to identify an established procedure, rule, or regulation upon which

09  he alleges defendants acted in freezing his account.   As reflected above, while plaintiff avers

10  he was told the County was acting pursuant to its custom (Dkt. 10 at 5), defendants maintain its

11  response was atypical to the customary practice (Dkt. 38, ¶6).   Defendants also describe their

12  atypical response as an attempt to prevent plaintiff from disbursing the money in his account

13  prior to a determination of restitution (*Id.*, ¶3), which suggests the need for quick action and the

14  impracticality of a pre-deprivation process.   *See*, *e.g.*, *Parratt*, 451 U.S. at 539 (noting the

15  recognition "that either the necessity of quick action by the State or the impracticality of

16  providing any meaningful predeprivation process, when coupled with the availability of some

17  meaningful means by which to assess the propriety of the State's action at some time after the

18  initial taking, can satisfy the requirements of procedural due process.")   *But see Zinermon*, 494

19  U.S. at 132, 136-38 (finding *Parratt* inapplicable where the deprivation of liberty was

20  predictable, the creation of a pre-deprivation process was not impossible, and the deprivation

21  was the result of an official's "'abuse of his position[,]'" rather than random and unauthorized)

22  (quoted source omitted); *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999) (finding acts at

REPORT AND RECOMMENDATION
PAGE -18

01  issue not random and unauthorized where officials had the authority to effect the deprivation

02  and the duty to afford procedural due process); *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th

03  Cir. 1985) (deprivation that is the product of "institutionalized practice" is "neither random nor

04  unauthorized, but wholly predictable, authorized, and within the power of the state to control.")

05          In any event, even assuming the temporary freeze constituted a deprivation of property

06  requiring pre-deprivation process, plaintiff was provided such process in the April 2010

07  disciplinary hearing.  As described above, plaintiff was sanctioned for, among other things,

08  property damage of more than $100.00.  (Dkt. 40, ¶4 and Ex. A.)  Plaintiff makes no showing

09  that the April 2010 disciplinary procedures associated with this and the other sanctions were in

10  any way deficient.  *See Wolff*, 418 U.S. at 563-69.  He, therefore, fails to establish a violation

11  of his due process rights in the temporary freeze placed on his inmate account.  *See, e.g.,*

12  *Campbell v. Miller*, 787 F.2d 217, 223-25 (7th Cir. 1986) (where inmate "had precise notice of

13  the charges against him[,] . . was given a hearing before the Institution Discipline Committee,

14  and had a reasonable opportunity to defend himself[,]" he "was afforded procedural due process

15  consonant with the circumstances of his incarceration."); *Ruley v. Nevada Bd. of Prison*

16  *Comm'rs*, 628 F. Supp. 108, 110-13 (D. Nev. 1986) (due process not offended when prison

17  officials assessed $3,000 as restitution and then froze trust account where there was no

18  allegation inmate "was not provided a meaningful opportunity to refute the case against him.")[4]

19          Also, that the account remained frozen after the conclusion of the disciplinary

20          4 As presented by defendants, following the initiation of the disciplinary hearing on April 1,
2010, plaintiff's inmate account was frozen on April 6, 2010 and the hearing concluded the following

21  day, on April 7, 2010.  (Dkt. 38, ¶3 and Dkt. 40, ¶¶5, 10.)  The Court does not find this one-day
difference significant given that plaintiff had been provided sufficient notice and opportunity to present

22  his defense prior to the freezing of his inmate account, as well as given defendants' reasonable concern
that plaintiff would disburse his money prior to a determination regarding restitution.

01  proceeding is explained by the fact that the inmate disturbance and associated property damage

02  were the focus of both internal disciplinary proceedings and state criminal proceedings, the

03  latter of which did not resolve until shortly after the removal of the freeze on plaintiff's account.

04  (*See*, *e.g.*, Dkt. 33 at 7, Dkt. 35, ¶3, and Dkt. 38, ¶3.)   For this reason and for the reasons stated

05  above, plaintiff's due process claim should be denied.

06       c.   Cruel and Unusual Punishment:

07       The Eighth Amendment prohibits the cruel and unusual punishment of prisoners, while

08  the punishment of pretrial detainees is prohibited by the Fourteenth Amendment.   *Bell v.*

09  *Wolfish*, 441 U.S. 520, 535 (1979).   *But cf. Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998)

10  ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to

11  prisoners' rights under the Eighth Amendment, however, we apply the same standards.")

12  "Under the Due Process Clause, detainees have a right against jail conditions or restrictions that

13  'amount to punishment.'"   *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008)

14  (quoting *Bell*, 441 U.S. at 535-37).

15       The test for identifying unconstitutional punishment at the pretrial stage of a criminal

16  proceeding requires a court to examine "whether there was an express intent to punish, or

17  'whether an alternative purpose to which [the restriction] may rationally be connected is

18  assignable for it, and whether it appears excessive in relation to the alternative purposes

19  assigned [to it].'"   *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441

20  U.S. at 538).   "For a particular governmental action to constitute punishment, (1) that action

21  must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the

22  governmental action must be to punish the detainee."   *Id*. at 1029.   Further, "to constitute

01     punishment, the harm or disability caused by the government's action must either significantly

02     exceed, or be independent of, the inherent discomforts of confinement."   *Id*. at 1030.

03          Defendants attest that DAJD inmates are provided with all basic necessities of life,

04     including, *inter alia*, meals, bedding, towels, hygiene items, clothing, shoes, laundry, and

05     health services.   (Dkt. 34, ¶5.)   Moreover, as plaintiff was reminded in the response to his

06     grievance, he remained able to order indigent commissary despite the freeze on his account.

07     (Dkt. 33 at 7.)   Plaintiff avers only that the temporary freeze interfered with his ability to "buy

08     phone card(s) & ect. . .   [,]" (Dkt. 10 at 5), and, therefore, makes no showing of any resultant

09     harm or disability.   *Cf. Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (institution

10     complies with the Eighth Amendment in providing sentenced prisoners with "'adequate food,

11     clothing, shelter, sanitation, medical care, and personal safety.'") (quoted source omitted).

12          Nor does plaintiff establish any intent to punish.   "[M]aintaining institutional security

13     and preserving internal order and discipline are essential goals that may require limitation or

14     retraction of the retained constitutional rights of both convicted prisoners and pretrial

15     detainees."   *Bell*, 441 U.S. at 546.   *Accord Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)

16     ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial,

17     maintaining jail security, and effective management of a detention facility.")   Moreover,

18     corrections administrators "should be accorded wide-ranging deference in the adoption and

19     execution of policies and practices that in their judgment are needed to preserve internal order

20     and discipline and to maintain institutional security."   *Bell*, 441 U.S. at 547.

21          In this case, defendants explain the temporary freeze on plaintiff's account as intended

22     to prevent the disbursement of money prior to a determination of whether plaintiff owed

REPORT AND RECOMMENDATION
PAGE -21

01  restitution.   (Dkt. 38, ¶3.)   Defendants, therefore, assign an alternative and reasonable purpose

02  for the action taken.   *Cf. Chilcote v. Mitchell*, 166 F. Supp. 2d 1313, 1315, 1318 (D. Or. 2001)

03  (confinement of pretrial detainees in cramped, triple-bunked cells for 20 to 21 hours a day did

04  not rise to the level of a constitutional violation in the face of the population-based needs and

05  security concerns).   For this reason, and for the reason stated above, plaintiff's claim of cruel

06  and unusual punishment should also be denied.

07  E.      State Law Claims

08          Plaintiff's complaint arguably also contains state law claims of slander raised against

09  defendant Starks and Major John Doe.  (Dkt. 10 at 6-7.)  Because the Court finds all of

10  plaintiff's federal claims subject to dismissal for the reasons described above, it recommends

11  that the Court decline to exercise supplemental jurisdiction over any state law claims and to

12  dismiss those claims without prejudice for want of jurisdiction.   *Ove v. Gwinn*, 264 F.3d 817,

13  826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related

14  state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'")

15  (quoting 28 U.S.C. § 1367(c)(3)).

16                                          CONCLUSION

17          For the reasons described above, defendants' unopposed motion for summary judgment

18  (Dkt. 34) should be GRANTED and this matter DISMISSED with prejudice as to plaintiff's

19  federal constitutional claims.[5]   The Court further recommends that the Court decline to

20  exercise supplemental jurisdiction over any state law claims and that any such claims be

21  _____

22          5 Finding dismissal appropriate for the reasons described herein, the Court declines to address
other arguments raised in defendants' motion for summary judgment.

REPORT AND RECOMMENDATION
PAGE -22

01  DISMISSED without prejudice for want of jurisdiction.   A proposed order accompanies this

02  Report and Recommendation.

03          DATED this 12th day of May, 2011.

04

05                                                        _____
                                                          Mary Alice Theiler
06                                                        United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -23